IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES T. SEAY           )
                        )
v.                      )   No. 3:05-0058
                        )   Judge Nixon/Brown
JO ANNE B. BARNHART, Commissioner )
of Social Security      )

To: The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

Currently pending in this civil action are plaintiff's motion for judgment on the administrative record[1] (Docket Entry No. 7) and, in lieu of a response to plaintiff's motion, the Commissioner's motion for reversal and remand of the administrative decision pursuant to sentence four of 42 U.S.C. § 405(g) (Docket Entry No. 13). Plaintiff has filed a reply to the Commissioner's motion, indicating that he has no objection to the requested reversal and remand for further administrative proceedings (Docket Entry No. 15). Nonetheless, it is the recommendation of the undersigned that the Commissioner's motion be **DENIED** insofar as it requests remand for further

---

[1] The undersigned must note that plaintiff's brief in support of his motion for judgment does not comply with the requirement of Local Rule 8(a)(1) that such material be "clearly legible." The font size is entirely too small, and the contents do not appear to be double spaced. The result is a document which in effect exceeds the twenty-five page limitation established in Local Rule 8(b)(2). In the future, plaintiff's counsel would be well advised to seek an extension of this page limitation, rather than formatting his document to fit the existing limit in contravention of the requirements of Local Rule 8.

1

administrative consideration, that plaintiff's motion for judgment on the administrative record be **GRANTED**, and that the decision of the Commissioner be **REVERSED** and the cause **REMANDED** for an immediate award of benefits.

## I.   INTRODUCTION

The record reflects that plaintiff began his pursuit of disability insurance benefits in 1996, though that initial application was apparently abandoned after a denial upon agency reconsideration on January 28, 1997 (Tr. 953).  In April of 1997, plaintiff protectively filed the applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") that are the subject of this review, alleging the onset of disability as of June 12, 1995 (Tr. 926-28, 932, 1174-76). Following denials at the initial and reconsideration levels, plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), held on April 23, 1998 (Tr. 121-166).  On June 3, 1998, the ALJ issued a written decision unfavorable to plaintiff (Tr. 170-79).

On August 5, 1998, plaintiff requested review of the ALJ's decision by the Appeals Council (Tr. 186).  The Appeals Council did not rule on this request until January 23, 2001, **some two and one-half years later**, on which date the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for

2

rehearing and consideration of an expanded record, to include a consultative mental evaluation which the ALJ was directed to obtain (Tr. 252-54).  In the interim, plaintiff had protectively filed new applications for benefits on March 29, 2001, and after initial and reconsideration denials and plaintiff's request for an ALJ hearing on January 2, 2001 (Tr. 265), it appears that proceedings on all applications were consolidated for hearing by the ALJ on May 15, 2002 (Tr. 75-120).

On July 25, 2002, the ALJ again issued a written decision denying plaintiff's claims (Tr. 52-65).  On August 22, 2002, plaintiff filed a request for review with the Appeals Council, including a request for a copy of the record made at the ALJ hearing and a request to file an appellate brief (Tr. 48-51). In response to these requests, the Appeals Council evidently sent only a duplicate recording of the original ALJ hearing in 1998 (Tr. 20).  Accordingly, on May 30, 2004, plaintiff filed an appellate brief which referenced the Appeals Council's failure to provide the more recent recording and renewed his request for a duplicate recording of the post-remand hearing held on May 15, 2002 (Tr. 19-47).  On October 13, 2004, the Appeals Council belatedly produced a duplicate recording of the post-remand hearing (Tr. 16-17).  Finally, on November 26, 2004, **more than two years and three months** after the filing of plaintiff's request for review, the Appeals Council denied that request for

3

review, leaving the ALJ's second decision as the final decision of the Commissioner.

Following plaintiff's filing of this lawsuit and his motion for judgment on the administrative record, **as well as two extensions of time** requested by the Commissioner in which to respond to plaintiff's motion for judgment (Docket Entry Nos. 9-12), the Commissioner has now conceded that the second ALJ decision is erroneous, and requests reversal and remand for further administrative consideration.

## II. DISCUSSION

The Commissioner, in her motion for remand, concedes this litigation to plaintiff, admitting that the decision of the ALJ is invalid and indefensible as written. In her supporting memorandum (Docket Entry No. 14), the Commissioner states that she "believes that remand is appropriate in order to reevaluate Plaintiff's alleged (1) carpal tunnel syndrome and (2) mental impairment." Plaintiff does not oppose the requested remand.

In Faucher v. Secretary H.H.S., 17 F.3d 171 (6th Cir. 1994), the Sixth Circuit Court of Appeals addressed the issue of ". . . what a district court should do once a determination is made that an ALJ erroneously applied the regulations and the [Commissioner]'s denial of benefits therefore must be reversed", concluding that a remand for further fact-finding is appropriate

4

unless ". . . all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Id. at 173, 176. Moreover, the Faucher court stated that

> [W]hen the [Commissioner] misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. . . . A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

Id. at 175-176 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Here, defendant's motion for remand is properly made under the fourth sentence of 42 U.S.C. § 405(g), which states that the district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." While the parties agree that reversal of the Commissioner's decision is warranted here, and apparently agree that further administrative fact-finding is in order, the undersigned cannot agree with the latter proposition.

In light of the above cited history of administrative delay and error, the undersigned is frankly appalled by the suggestion that the ALJ be given a third bite at the apple. Again, plaintiff's claims for benefits have been pending for **more**

5

**than eight years**, and have already endured one administrative remand and two ALJ hearings. The requested judicial remand, apparently for the purpose of re-writing the administrative decision in light of the errors pointed out by plaintiff in his brief to this Court, simply cannot be justified. The record in this case is nearly 1200 pages long -- suffice it to say that no further development of the evidence is needed. Moreover, that record adequately establishes that plaintiff is indeed disabled and entitled to benefits.

As noted by the Appeals Council in its order of remand, the consultative psychological examiner in 1998 obtained intelligence quotient ("IQ") scores of 68 in the Verbal domain and 64 in the Performance and Full Scale domains, easily justifying her conclusion that plaintiff functioned in the mild mental retardation range (Tr. 537). Although the examiner noted that these scores may "slightly" under-represent plaintiff's actual intellectual functioning because of his questionable motivation, these scores were sufficiently troublesome to prompt the Appeals Council to direct an additional consultative examination on remand.

At this post-remand consultative examination in 2002, plaintiff again reported experiencing auditory hallucinations, just as he had during his 1998 examination, and the examiner noted that this strongly suggested a psychotic process which

6

"could possibly have lowered his performance during the testing session" (Tr. 778), during which plaintiff received a Verbal IQ score of 65, a Performance IQ score of 69, and a Full Scale IQ score of 64. However, the examiner subsequently stated that "[i]n the absence of a psychotic process it is estimated ... that Mr. Seay's level of functioning would still likely fall within the upper deficient range or possibly the lower borderline range of intelligence." (Tr. 780). The examiner went on to note that plaintiff would not be able to manage funds, assigned a current Global Assessment of Functioning ("GAF")[2] score of 50, and assessed plaintiff as markedly limited in his ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions,

---

[2]As relevant here, the GAF scale is comprised of the following scores and corresponding descriptions:

31-40: Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).
41-50: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).
51-60: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
61-70: Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
71-80: If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).

(Docket Entry No. 8, attachment A).

interact appropriately with the public, and respond appropriately to work pressures in a usual work setting (Tr. 781-86). For purposes of this assessment, a "marked" limitation is defined as a "serious limitation" which severely limits but does not preclude the ability to function (Tr. 784). Such limitations correspond with the GAF of 50 assigned by the consulting examiner, reflecting serious symptoms and limitation of function. The vocational expert at plaintiff's post-remand hearing testified that "if a person consistently performs at 50 or below, by definition that would prevent work. It's generally accepted that a GAF of 51 or above is necessary to perform work." (Tr. 115).

The ALJ appeared to believe that the GAF scores assigned by treating and consulting sources established a baseline of 55, with occasional fluctuations above or below that mark, finding that "[t]he overall evidence indicates that the claimant has generally had moderate mental limitations, at most, and that his condition has not imposed more severe mental limitations of function on an ongoing basis, for a period of at least 12 continuous months." (Tr. 60). He also believed that the evidence demonstrated plaintiff's functioning at the borderline level of intelligence. However, the record made by the consulting examiners is more supportive of a finding of deficient or mildly retarded (versus borderline) intellectual

8

functioning, and while the record does not establish the timing and extent of adaptive deficits which, in combination with the IQ scores, would support a diagnosis of mental retardation, it does establish that plaintiff's ability to function has generally been seriously limited, rather than moderately limited.

Specifically, aside from one aberrant assessment of plaintiff's GAF of 70-75 by the first consultative examiner (Tr. 538), the assessments reflect a GAF of 50 assigned by the post-remand consultative examiner, and out of sixteen occasions between September 1998 and May 2002, plaintiff's treating therapist(s) at Cumberland Mental Health Services, Inc., assessed his GAF as 50 or below eleven times, with six assessments at 40 or below and only five assessments as high as 55 (Tr. 647, 650, 820-847, 740-45, 880). In addition to his impaired intellectual functioning, he carries a diagnosis of Major Depressive Disorder, Recurrent, Severe with Psychotic Features given by his treating mental health provider (Tr. 650), as well as the diagnoses of Bipolar Disorder and Schizophrenia given by his primary care physician (Tr. 525, 662). He was also assessed by his treating source on May 13, 2002 as being markedly limited in the domains of interpersonal functioning and adaptation to change (Tr. 880-81).

The undersigned concludes that this proof of plaintiff's mental impairments, combined with the proof of his

host of physical impairments including bilateral carpal tunnel syndrome and gouty arthritis of the hands and feet, amounts to strong evidence of disability, with significant evidence to the contrary lacking.  The Commissioner should not be allowed another round of administrative review, but should be directed to award benefits from an onset date of September 1, 1999, the date upon which plaintiff's GAF began to be consistently assessed as 50 or below, and upon which his therapist observed that he is unable to hold a job because of his depression, can focus on simple tasks but needs advanced prompting to progress, and reacts negatively to change (Tr. 843-44).

### III.  RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that the Commissioner's motion for reversal and remand under sentence four of 42 U.S.C. § 405(g) be **DENIED** insofar as it requests remand for further administrative consideration, that plaintiff's motion for judgment on the administrative record be **GRANTED**, and that the decision of the Commissioner be **REVERSED** and the cause **REMANDED** for an immediate award of benefits from the onset date of September 1, 1999.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections

10

Case 3:05-cv-00058   Document 16   Filed 07/25/05   Page 10 of 11 PageID #: 16

shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this the 25th day of July, 2005.

      /s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge