UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES T. SEAY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 3:05-0058 |
| ) | Judge Nixon |
| JO ANNE B. BARNHART, ) | Magistrate Judge Brown |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff's Motion for Judgment Based Upon the Administrative Record (Doc. No. 7) and, in lieu of a response to Plaintiff's motion, the Commissioner's motion for reversal and remand of the administrative decision pursuant to sentence four of 42 U.S.C. § 405(g) (Doc. No. 14). Plaintiff has filed a reply to the Commissioner's motion, indicating that he has no objection to the requested reversal and remand for further administrative proceedings. (Doc. No. 15.) Magistrate Judge Brown has issued a Report and Recommendation (Doc. No. 16) ("Report"), to which Defendant has objected (Doc. No. 17). The Court has reviewed the Magistrate Judge's Report, and for the reasons stated below, the Court ADOPTS the Magistrate Judge's Report and GRANTS Plaintiff's Motion for Judgment Based on the Administrative Record.

### I. BACKGROUND

The record reflects that Plaintiff began his pursuit of disability insurance benefits in 1996, though his initial application was apparently abandoned after a denial upon agency reconsideration on January 28, 1997. (AR 953.) In April of 1997, plaintiff protectively filed the

applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") that are the subject of this review, alleging the onset of disability as of June 12, 1995. (AR 926-28, 932, 1174-76.) Following denials at the initial and reconsideration levels, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), held on April 23, 1998. (AR 121-166.) On June 3, 1998, the ALJ issued a written decision unfavorable to Plaintiff. (AR 170-179.)

On August 5, 1998, Plaintiff requested review of the ALJ's decision by the Appeals Council. (AR 186.) Two and one-half years later, on January 23, 2001, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for rehearing. The Appeals Council instructed the ALJ on remand to obtain a consultative mental evaluation. (AR 252-254.) Shortly after the Appeals Council remand, Plaintiff filed additional applications for benefits on March 29, 2001, and the proceedings for all applications were consolidated for hearing by the ALJ on May 15, 2002. (AR 75-120.) On July 25, 2002, the ALJ issued a written decision again denying Plaintiff's claim (AR 52-65) and on August 22, 2002, Plaintiff filed a request for review with the Appeals Council (AR 48-51). More than two years and three months later, the Appeals Council denied that request for review on November 26, 2004, leaving the ALJ's second decision as the final decision of the Commissioner.

The Plaintiff is a male and was forty-four years old at the time of the alleged onset of disability. (AR 64.) The Plaintiff alleged the following impairments: mental retardation; major depressive recurrent, severe, with psychotic features ("Depression"); gouty arthritis of the bilateral feet and right knee; bilateral carpal tunnel syndrome; bilateral arthritis of the finger

joints; lower back pain; cardiovascular impairments; pulmonary impairment; obstructive sleep apnea; left eye pain; and side effects of medication. (AR 279.)[1]

### A. Depression

The Plaintiff visited a psychological consultative examiner, Dr. Linda Blazina, on April 19, 1998, who assessed the Plaintiff's GAF score of 70-75. (AR 538.) Shortly thereafter, Plaintiff began seeing Dr. Nii Saban Quao who diagnosed the Plaintiff with depression and referred him to Cumberland Mental Health Services ("Cumberland") for treatment. (AR 529.) The record shows that between September 1998 and May 14, 2002 the Plaintiff visited Cumberland sixteen times for treatment. On these occasions, Plaintiff's GAF scores fluctuated between thirty-eight and fifty five, with the majority of the scores below fifty. (AR 646-53, 739-52, 814-49, 879-84.) Beginning on September 1, 1999 the Plaintiff exhibited GAF scores consistently below fifty. (AR 843.) The Plaintiff asserts that GAF scores of forty-one to fifty indicate serious symptoms or any serious impairment in social, occupational, or school functioning. Cumberland's records from May 14, 2002 show Plaintiff had moderate limitation of his activities of daily living, marked limitation of interpersonal functioning, moderate limitation of concentration, task performance, and pace, and marked limited limitation of adaptation to change. (AR 880.)

A second consultative examiner, Dr. Alan Yarborough examined the Plaintiff on May 1, 2000 and April 9, 2002, and assessed GAF scores of fifty-five and fifty, respectively. Dr. Yarborough pointed out that the Plaintiff reported auditory hallucinations, which suggest a strong possibility of a psychotic process. (AR 777, 778.) Dr. Yarborough also believed that the

---

[1]The Court does not need to address all of the numerous disabilities Plaintiff alleges. The Court finds that the combination of Plaintiff's level of intelligence functioning and Depression is sufficient to demonstrate the ALJ's failure to base his conclusions on the substantial evidence.

-3-
Case 3:05-cv-00058   Document 19   Filed 04/17/06   Page 3 of 12 PageID #: 32

Plaintiff had marked limitations in his ability to interact and respond appropriately with his supervisor and co-workers, in his ability to interact in a usual work setting, and in his ability to respond appropriately to changes in a routine work setting. (AR 785.)

### B. Mental Intelligence Functioning

Both Dr. Blazina, in 1998, and Dr. Yarborough, in 2002, assessed the Plaintiff's mental intelligence functioning level. Dr. Blazina found that the Plaintiff had a verbal IQ of sixty-eight, a performance IQ of sixty-four, and a full scale IQ of sixty-four. (AR 1166.) Dr. Blazina observed that the Plaintiff's "intellectual functioning is within the mild mental retardation range . . . [however,] it is possible that his actual functioning may be in the low borderline range, as he did not appear highly motivated during the testing situation." (AR 534.) Dr. Yarborough found that the Plaintiff had a verbal IQ of sixty-five, a performance IQ of sixty-nine, and a full scale IQ of sixty-four. (AR 780.) Dr. Yarborough pointed out that the Plaintiff was functioning within the deficient range of intelligence (AR 781), and that the Plaintiff's auditory hallucinations and psychotic process had the potential to <u>lower</u> his score (AR 777, 778).

The Plaintiff completed the ninth grade and attended special education classes. (AR 79.) The Plaintiff's "Employer's Assessment" states that the Plaintiff was unable to understand or carry out detailed instructions, maintain attention and concentration, or perform tasks in a timely manner. (AR 1000-04.) In addition, at the time of the second hearing before the ALJ, the Plaintiff was looking for work at the Prospect Center, a non-profit center for mentally challenged individuals. (AR 59.)

The ALJ's written decision from July 25, 2002 found that the Plaintiff had not engaged in any substantial gainful activity since June 12, 1995, the alleged onset date of disability. (AR 56.) The ALJ found that the Plaintiff had a combination of impairments which were severe including

hypertension, depression, degenerative disc disease, but he did not have any impairment or combination of impairments of the level of severity required by 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 64.) The ALJ found that the evidence established that the Plaintiff has "the residual capacity to perform light, unskilled work, with up to 20 pounds of lifting" (Id.) but that the Plaintiff is unable to perform his past relevant work "as a garbage collector or as a garbage truck driver, jobs which involve the performance of medium work or even greater exertion." (Id.) Ultimately, the ALJ found that the Plaintiff's limitations prevent him from being able to perform a full range of light work, but "there are a significant number of jobs in the economy which he could perform . . . there are about 60,500 . . . jobs in existence [which he has the capacity to perform]." (AR 65.) However, according to the vocational expert at the hearing, the Plaintiff's past work as a garbage collector classified as very heavy, unskilled work, and the Plaintiff's work as a garbage truck driver classified as medium and unskilled work. (AR 110.)

The ALJ concluded that the symptoms of Depression were generally moderate in nature (AR 58), despite evidence in the record showing that a majority of the plaintiff's GAF scores were fifty or below. In fact, the Plaintiff argues that according to the Diagnostic and Statistical Manual of Mental Disorders – Fourth Edition ("DSM-IV"), GAF scores between forty-one and fifty represent "serious symptoms or any serious impairment in social, occupational, or school functioning." (Doc. No. 8 at 4.) The DSM-IV, describes a GAF of fifty-one to sixty as "moderate symptoms." (Id.) The ALJ also concluded that the overall evidence does not support the Cumberland's assessment that the Plaintiff has marked limitations, particularly in areas of social functioning and making adaptations. (AR 60.)

Plaintiff alleges, among other things, that the ALJ erred in finding that he had no "severe" impairment and that the ALJ did not employ the proper legal standard by failing to provide adequate reasons for rejecting the medical evidence of the impairments. (Doc. No. 8 at

-5-
Case 3:05-cv-00058   Document 19   Filed 04/17/06   Page 5 of 12 PageID #: 34

2.) The Defendant has now conceded that the ALJ decision is erroneous, and requests reversal and remand for further administrative consideration. The Magistrate Judge agreed with the Plaintiff's objections and concluded that the proof of Plaintiff's mental impairments amounts to strong evidence of disability, with evidence to the contrary lacking. (Doc. No. 16 at 10.) The Magistrate recommended awarding benefits from an onset date of September 1, 1999.

Defendant objects to the Magistrate's Report. First, the Defendant contends that remand is proper to correct errors in the ALJ's interpretation of evidence. (Doc. No. 17 at 3.) Second, Defendant argues that the Plaintiff's GAF scores vary widely and that remand is appropriate for further administrative development. (Id. at 3-4.) Third, the Defendant argues that the ALJ properly decided the issue of mental retardation. (Id. at 3.) The Court will address Defendant's objections de novo. 28 U.S.C. § 636(b)(1).

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to the record from the administrative hearing process. Jones v. Sec'y, 945 F.2d 1365, 1369 (6th Cir. 1991). Title II of the Social Security Act (the "Act") provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r, 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v.

Comm'r, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Sec'y, 753 F.2d 517 (6th Cir. 1985).

### III.     ANALYSIS

#### A.     Remand Is Unnecessary Where The Record Is Adequate, There Is Strong Evidence of Disability, And Evidence To The Contrary Is Lacking

Generally, the district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).

In addition, Faucher v. Secretary of Human Health Services, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit Court of Appeals addressed "what a district court should do once a determination is made that an ALJ erroneously applied the regulations and the [Commissioner]'s denial of benefits must be reversed," concluding that a remand for further fact-finding is appropriate unless "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Id. at 176. Moreover, the Faucher court stated,

> [W]hen the [Commissioner] misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits . . . A judicial award of benefits is proper only where the proof of disability is strong and evidence to the contrary is lacking.

Id. at 175-76 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)). The Sixth Circuit concluded in Mowery that, "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof

-7-

of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." (Id.)

The Defendant objects to the Magistrate's award of benefits, because according to the Defendant, remand is proper to correct errors in the ALJ's evaluation of the evidence. (Doc. No. 17 at 3.) The Defendant also argues that the Magistrate's emphasis on the administrative delay in this matter cannot be a basis for awarding benefits where disability has not been proven. (Doc. No. 17 at 2.) Although the administrative delay in this matter has been significant and indicates a need for expediency, the Court's award of disability benefits is firmly rooted in the substantial evidence in the administrative record. If the Court believes an award of benefits is proper, it must not only find that the ALJ's conclusions were not based on the substantial evidence, but also under Faucher and Mowery, the Court needs to show that there is a full and adequate record. Moreover, the record must demonstrate strong proof of disability, with evidence to the contrary lacking.

In the instant matter, the Court finds that there is a full and adequate record, and substantial evidence exists to establish strong proof of disability, with evidence to the contrary lacking. The record in this case is nearly 1200 pages long, and the facts have been adjudicated twice before the ALJ, and once before the Appeals Council. Thus, both parties have had several opportunities and ample time to make their cases and ferret out lingering factual discrepancies. Still, the Defendant contends that remand is proper to correct the ALJ's errors in misreading an EMG test with regard to the presence of carpal tunnel, and his failure to properly evaluate Plaintiff's mental impairment. The Court does not agree. Applying <u>Faucher</u> and <u>Mowery</u>, this Court holds that a 1200 page record, extensively detailing numerous claimed impairments, and including documentation from treating sources, as well as consultative examiners, suffices as a full and adequate record. The Court should now consider whether the ALJ's decision was

-8-

clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.

### B. Substantial Evidence Does Not Support The ALJ's Characterization Of The Plaintiff's GAF Scores

The Defendant also objects to the Magistrate's characterization of the GAF scores as a strong indicator of disability. Defendant contends that Plaintiff's GAF scores vary widely and that remand is appropriate for further administrative development, because it is difficult to evaluate disability in terms of raw GAF scores. (Doc. No. 17 at 3.) The Defendant thus concludes that this is precisely "why remand for further administrative development is needed and why the Magistrate Judge should not have resolved the conflicting medical evidence." (Id. at 4.)

The record before this Court specifically demonstrates that aside from one aberrant assessment of the Plaintiff's GAF of seventy to seventy-five by the first consultative examiner (AR 538), the GAF assessments reflect a majority of scores of fifty or below. In fact, out of sixteen occasions between September 1998 and May 2002, Plaintiff's treatment records from Cumberland prove that his GAF was fifty or below eleven times, with six assessments at forty or below, and only five assessments as high as fifty-five. (AR 647, 650, 820-847, 740-45, 880.) By September 1, 1999, the Plaintiff's GAF was consistently assessed as fifty or below, and his therapist observed that he is unable to hold a job because of his depression, can focus on simple tasks but needs advanced prompting to progress, and reacts negatively to change. (AR 843-44.) Cumberland's records also note that the Plaintiff had moderate limitations in his activities of daily living; marked limitation of his interpersonal functioning; moderate limitations of his

concentration, task performance, and pace; and marked limitation of his ability to adapt to change. (AR 880.)

In stark contrast to the substantial evidence, the ALJ believed that the GAF scores assigned by treating and consulting sources established a baseline of fifty-five and that "the overall evidence indicates that the [Plaintiff] has generally had moderate mental limitations, at most, and that his condition has not imposed more severe mental limitations of function on an ongoing basis, for a period of at least [twelve] continuous months." (AR 60.) The ALJ's conclusion that the Plaintiff's GAF scores ranged between fifty and fifty-five, and that his symptoms were generally moderate in nature was clearly erroneous. Instead, the record demonstrates that as of September 1, 1999, Plaintiff's GAF began to be consistently assessed as fifty or below, and his symptoms were severe in nature. Therefore, the Court finds the numerous records from Cumberland spanning 1998 to 2002, concerning the Plaintiff's Depression, as proof of strong evidence of disability. The Court also finds that the one GAF score of seventy to seventy-five as assessed by consultative examiner, Dr. Blazina in 1998, to be insufficient evidence to the contrary.

> C. **The Substantial Evidence Does Not Support The ALJ's Finding Of Borderline Intelligence, But Proves The Plaintiff Functions In The Deficient Range**

The ALJ concluded that the Plaintiff is functioning at a borderline intelligence level and that the Plaintiff's adaptive functioning is not suggestive of mental retardation. (AR 62.) The ALJ derived his conclusion from two IQ assessments. According to the ALJ, the IQ tests administered by Dr. Blazina and Dr. Yarborough failed to give concrete results, because both doctors indicated an unwillingness to categorize the Plaintiff as definitively retarded, or functioning in the borderline range of intelligence. The ALJ found the key element of the

assessments to be a <u>possibility</u> of lower scores on the basis of Plaintiff's lack of motivation during testing, as well as the <u>potential</u> for psychotic processes to hinder Plaintiff's peformance. The Plaintiff argues that the record does not support the ALJ's finding, rather, the substantial evidence of record supports a conclusion that the Plaintiff's mental retardation is a severe impairment. The Defendant argues that it is improper for the Court to substitute its opinion of mental functioning for that of the ALJ's opinion. (Doc. No. 17 at 3.)

The record shows that Dr. Blazina and Dr. Yarborough administered IQ tests to the Plaintiff in 1998 and 2002, respectively, and recorded verbal IQ scores of sixty-eight and sixty-five, performance IQ scores of sixty-four and sixty-nine, and full scale IQ scores of sixty-four and sixty-four. (AR 1166, 780.) The doctors' notes in the record demonstrate that they considered the Plaintiff to be functioning in the mentally deficient range, and thus, the substantial evidence does not support the ALJ's finding. (Doc. No. 8 at 7.) For instance, the ALJ apparently overlooked Dr. Blazina's conclusion that the Plaintiff's, "Intellectual functioning is within the mild mental retardation range . . ." (<u>Id.</u> at 6) and instead focused on the <u>possibility</u> that the Plaintiff's decreased motivation during testing lowered his scores. (AR 62.) In similar fashion, the ALJ also failed to consider Dr. Yarborough's conclusion that the Plaintiff "does appear to be functioning within the deficient range of intelligence at this time . . . ." (AR 781.) The ALJ omitted this observation in favor of Dr. Yarborough's recommendation that the scores be interpreted with caution. This was despite the fact that Dr. Yarborough found that even absent psychotic process Plaintiff would still fall within the upper deficient range. By relying on the mere possibility of skewed scores, instead of the actual findings of the consultative examiners, the ALJ erroneously refused to accept the test scores, and failed to base his conclusion on the substantial evidence.

The Court finds that the substantial evidence supplied by the IQ tests and supplemental notes from the consultative examiners reveal that the Plaintiff was functioning in the mentally retarded level of intelligence. The Court does not believe that the concerns of the consultative examiners should suffice as evidence to the contrary, because Dr. Blazina indicated that the Plaintiff's scores merely had the <u>possibility</u> of being slightly higher (AR 535, 536), while Dr. Yarborough opined that "in the absence of a psychotic process it is estimated by this examiner that Mr. Seay's level of functioning would still likely fall within the upper deficient range . . . ." (AR 780.)

### IV.     CONCLUSION

The Court holds that the substantial evidence in the record fails to support the findings of the ALJ. This Court finds remanding the case to be unnecessary and superfluous, because the record is amply full and adequate, and contains strong evidence of disability, with evidence to the contrary lacking. Thus, the Court DENIES Defendant's request for remand for further administrative consideration, and GRANTS Plaintiff's Motion for Judgment on the Administrative Record. The decision of the ALJ is REVERSED and the cause REMANDED for an immediate award of benefits from the onset date of September 1, 1999.

It is so ORDERED,

Entered this the   17th   day of   April,   2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT